**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**ALISA D. RING** **PLAINTIFF**

**VERSUS** **CIVIL ACTION NO. 1:14cv296-RHW**

**CAROLYN W. COLVIN,**
**Commissioner of Social Security** **DEFENDANT**

# MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), Alisa D. Ring filed this action July 31, 2014 seeking judicial review of the denial of her claim for Supplemental Security Income (SSI) benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case [10] and the matter was reassigned to the undersigned for all further proceedings by [11] order entered January 29, 2015.

## Facts and Procedural History

On October 4, 2011, Ring filed application for SSI alleging she has been disabled since July 1, 2011. Specifically, Ring asserted disability due to heart problems, anxiety, pacemakers, cardiomyopathy, congestive heart failure, sleep apnea, bipolar, reflux and prior surgery. The claim was denied initially on December 14, 2011, and on reconsideration on March 16, 2012. [7, pp. 132-143] Administrative Law Judge (ALJ) Lanier Williams conducted a hearing on Ring's claim on May 28, 2013, which was attended by Ring and her attorney Paulette Turner, who has represented Ring since April 2012, and by Vocational Expert Robert E. Walker. [7, pp. 94-131, 165-66] Based on the testimony from Ring and Walker at that hearing, and the documentary evidence received in the case, ALJ Williams concluded on August 9, 2013 that

Ring had not been under a disability as defined in the Social Security Act since October 4, 2011. [7, pp. 58-71]

According to Ring's testimony, she is a high-school graduate and was just over 42 years old when she became disabled on July 1, 2011. She has neither worked nor looked for work since that time. She has two children, ages 10 and 19. Her typical day is to get up, take her medicine to control fluid retention, and get her younger child ready for school. She testified she cannot perform like she could when she was younger; that sweeping, mopping, dusting or doing anything is a major chore for her; she can do the clothes and take out the trash, but she tires easily and has shortness of breath. She testified she was diagnosed bipolar by a psychiatrist in Biloxi, Mississippi when she and her husband divorced in 2005, and she takes medication for the condition but she did continue working after that diagnosis. Ring testified that due to insurance and financial problems following her divorce, she stopped seeing the psychiatrist and has since been treated by her family physician, Dr. William Ross. She has seen no psychologist or psychiatrist since filing her application for benefits, because her "medicine is stable" and Dr. Ross now prescribes it. In 2008, Ring had her first pacemaker put in. [7, p. 193] She recorded her second and third highest yearly earnings in 2008 and 2009. [7, p. 180] Ring testified since having her second pacemaker implanted June 27, 2011, she spends about half of the day in bed, elevated to facilitate breathing. When she goes out with someone she cannot walk at a normal pace and gets out of breath. She stated she cannot pick up more than 10 pounds, that when she sits very long her legs "get stove up like." Fluid build-up affects her hands, legs, neck and face. She sees her cardiologist Dr. Storey every three to six months or as needed, and Dr. Ross every six months for blood work and medications. [7, pp. 104-116]

Vocational Expert Robert E. Walker, Jr. testified Ring has some prior work history at medium and light work levels, but none at a sedentary level. Ring's records indicate she has worked as a clerk/stocker, salad bar worker, and most recently as a security guard and shuttle driver. [7, pp. 194, 213-218, 257] Considering Ring's age, education and work background, with a limitation to sedentary work with no climbing ladders, ropes or scaffolds, nor more than five steps at a time, with no exposure to extreme heat and cold, avoiding fumes, dust, smoke, and working around hazardous machinery or at unprotected heights, and limited to doing routine repetitive work without significant dependence interacting with people and limited interaction with the public and co-workers and in receiving supervision, and with no timed production work, Walker testified there are jobs in the economy which would accommodate such a person. Those jobs include address clerk (approximately 70,000 jobs nationally), garment folder (about 100,000 nationally) and surveillance monitor (approximately 50,000 nationally). Walker stated these are sedentary jobs with a skill level of two, which are routine and repetitive in nature. He testified the definition of sedentary job is sitting at least six hours in a work day, but the identified jobs might be performed standing as well as sitting. Mr. Walker testified he has observed these and other jobs being performed, and that the address clerk and surveillance monitor jobs could be performed without necessarily having to sit a minimum of six hours in an eight-hour work day. On cross-examination he stated that a person who had to elevate her feet or lie down at least twice during a workday probably could not do these jobs. Whether frequent bathroom breaks would prevent performance of the jobs would depend on the employer. [7, pp. 117- 129] On August 9, 2013, ALJ Williams issued an 11-page decision based on consideration of all the evidence, finding Ring "has not been under a disability, as defined in the

Social Security Act, since October 4, 2011,[1] the date Ring filed her application. The Appeals Council denied review of the ALJ's decision on January 16, 2014 [7, pp. 44-48], which prompted the filing of the action presently before this Court.

Ring challenges the ALJ's findings that she is not disabled as defined by the Act, that her testimony was not entirely credible, and that there exist jobs in the national economy which she can perform. She also contends the ALJ erred in finding she does not have an impairment or combination of impairments that meet or medically equal the severity of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; that the ALJ failed to give sufficient weight to the opinions of her treating physicians; and that the Appeals Council erred in denying review of the ALJ decision.

<u>Standard of Review</u>

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Substantial evidence is more than a scintilla, but less than a preponderance, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision. *Villa*, 895 F. 2d at 1022. Credibility of witnesses and

[1]Although Ring claims disability since July 1, 2011, SSI benefits are payable only for the period after the application date. 20 C.F.R. § 416.335.

conflicts in the evidence are issues for resolution by the Commissioner, not the Court. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence. *Id.*; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)(a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision). Factual findings supported by substantial record evidence are conclusive and must be upheld. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

Analysis

The Social Security Act defines disability as, "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A). Ring had the burden of proving a disability which precluded her from engaging in substantial gainful work during the pendency of her application for benefits, *i.e.*, between her October 4, 2011 filing date and the ALJ's August 9, 2013 decision. *Masterson v. v. Barnhart*, 309 F. 3d 267, 271 (5th Cir. 2002);

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1991). It was her burden to produce evidence to support her claim. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (suffering of some impairment does not establish disability under the Act, claimant must prove she is "incapable of engaging in *any* substantial gainful activity").

The record clearly demonstrates that ALJ Williams applied the correct law for determining disability – the five-step sequential evaluation process set out at 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i-v). Step one requires a determination whether the claimant is engaging in substantial gainful activity, *i.e.*, work activity that involves significant physical or mental activities and is usually done for pay or profit. Judge Williams found Ring had not engaged in such activity since October 4, 2011.

Step two requires determination of whether the claimant has a medically determinable impairment or a combination of impairments meeting the duration requirement which is severe, *i.e*., which significantly limits her ability to perform basic work activities. ALJ Williams found Ring has severe impairments of congestive heart failure, cardiomyopathy, cardiac pacemaker, depression and rule out bipolar disorder, which cause significant limitation in her ability to perform basic work-related activities. With respect to her claimed mental impairments, the ALJ found those impairments neither singly nor in combination meet or medically equal the criteria of listing 12.04; Ring was found to have only moderate restrictions as to daily living activities, and moderate difficulties in social functioning, concentration, persistence and pace, which restrict her to work not dependent on significant interaction with others – routine, repetitive work

involving objects more than people – and no timed production. The record reflects no evidence of any episodes of decompensation. [7, pp. 63-64]

Step three requires determination of whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment or combination of impairments is of such severity and meets the duration requirement, the claimant is disabled; if it does not, the analysis continues to step four. Judge Williams found Ring does not have such an impairment or combination of impairments; that her impairments do not reach the level of severity required to meet or equal any of the relevant listings.

At the fourth step, Ring's residual functional capacity and past relevant work were considered, and ALJ Williams concluded Ring could not return to her former work as a security guard and shuttle bus driver. After carefully evaluating all the evidence, the ALJ found the objective medical evidence supports the residual functional capacity assessment that Ring's congestive heart failure, cardiomyopathy, pacemaker, depression and rule out bipolar impairments could be expected to limit her to a sedentary level of exertion with limitations of no climbing ladders, ropes, scaffolds or more than five steps at a time; avoiding exposure to extreme heat and cold, avoiding fumes, dust and smoke and avoiding work around hazardous machinery and unprotected heights; doing routine repetitive type work with limited interaction with others and receiving supervision – involving more work with objects than people and not dependent on interaction with others, and involving no timed production.

Step 5 involves consideration of the assessment of claimant's residual functional capacity, age, education and work experience to determine whether she can make an adjustment

to other work. One capable of making such an adjustment is not disabled. ALJ Williams found Ring can make such an adjustment to sedentary work with the above limitations. Sedentary work is defined as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles such as files, ledgers and small tools. While a sedentary job is defined as involving sitting, "a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

Ring objects to the finding that she is not disabled and that her testimony about the intensity, persistence and limiting effects of her symptoms was not entirely credible. The Court finds ample record evidence to support the ALJ's finding that, taken as a whole, the objective medical evidence showed Ring's condition improved significantly after she was treated for a heart blockage, and the records lacked abnormal cardiovascular or pulmonary findings to support the level of limitation she claimed. [7, p. 66] The ALJ meticulously evaluated the medical evidence presented to him. After noting Ring's June 27, 2011 surgery which included arterial and venous cannulation, laser lead extraction of right ventricular lead and temporary pacemaker placement [7, pp. 265-66], ALJ Williams addressed records from Cardiology Associates of Mobile [7, pp. 267-284] regarding Ring's treatment through November 30, 2011. Dr. Stephanie Grosz opined in September 2011 that Ring "is completely disabled and cannot work" [7, p. 366], however at a routine follow-up visit on November 30, 2011, Ring reported she was "doing much better," and her examination on that date yielded findings of, "No increased work of breathing or signs of respiratory distress," lungs clear to auscultation; heart palpitation normal PMI; auscultation of heart normal rate and rhythm, normal S1 And S2 without murmurs; normal

carotid, femoral and pedal pulses, normal abdominal aorta, and no edema or varicosities of extremities. [7, p. 281-83] In addition, Ring's Coastal Family Health Center records contained no abnormal cardiovascular or pulmonary clinical findings. [7, pp. 321-480]

When Dr. Grosz retired from Cardiology Associates effective January 31, 2012, Dr. James Storey took over Ring's treatment. [7, p. 364] Dr. Story opined on February 7, 2012 that Ring was totally disabled from a cardiovascular standpoint [7, p. 368]. Dr. Storey completed a Physical Residual Functional Capacity Assessment on May 23, 2013 in which he indicated Ring could lift 20 pounds occasionally and less than 10 pounds frequently, stand/walk for 2 hours and sit less than about 6 hours in an 8-hour workday; he noted no push/pull limitations; stated she could not climb (ramps/stairs/ropes/ladders/scaffolds), balance, stoop, kneel, crouch or crawl; but assigned no limitations as to manipulative, visual or communicative activities; Dr. Storey found environmental limitations requiring that Ring avoid all exposure to hazards (machinery, heights), avoid moderate exposure to extreme heat/cold, and avoid concentrated exposure to wetness, humidity, vibration, fumes, odors, dust, etc. [7, pp. 435-440]

On a November 8, 2011 Comprehensive Mental Status Evaluation, Dr. John Stoudenmire did not perceive any bipolar disorder, though he did note a major depressive disorder without psychosis. He noted that Ring gave only cardiac limitations for her stated inability to work, and Dr. Stoudenmire saw no reason why Ring would be unable to perform routine repetitive tasks. [7, pp. 285-290] Dr. Vicki Prosser, Ph.D., found Ring appears to have moderate symptoms of a mood disorder, moderate limitations in daily living skills, social skills, attention, concentration and pace. Dr. Prosser also opined that Ring was capable of understanding and carrying out instructions, maintaining attention and concentration adequately for 2-hour periods in an 8-hour

workday; that she can complete a normal work week without excessive interruptions from psychological symptoms, and can relate appropriately to coworkers and supervisors and adapt to a job setting. [7, pp. 303, 307] This testimony, in conjunction with that of the vocational expert, and even Dr. Storey's Physical Residual Functional Capacity Assessment of May 23, 2013 supports the finding that jobs exist which Ring can perform.[2] The ALJ is authorized to rely on Ring's medical records and other evidence rather than merely accepting her testimony, and the finding on this point is supported by such inconsistencies as complaints which Ring never reported to her doctors, and consistently normal findings in her medical records. Determining the weight and credibility to be accorded testimony is for the Commission. Evaluation of Ring's subjective symptoms "is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled," and the ALJ's findings are entitled to deference. *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983); *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)("These are precisely the kinds of determinations that the ALJ is best positioned to make.")

Ring claims her impairment meets or is equivalent to Listing Impairment 4.02 - Cardiovascular. The ALJ found her impairments place limitations upon her ability to work, but concluded they did not render Ring unable to do any work at all. On the issue of disability based upon a Listing equivalency, it was Ring's burden to show she meets or equals all of the specified medical criteria of a particular listing.

> To meet the criteria for Chronic Heart Failure, a claimant must show the requirements in both A and B are satisfied:

[2]At the hearing, Ring's attorney stressed Ring's inability to sit for 6 hours in an 8-hour workday. In disability reports prepared by Ring and her father (with whom she lives), neither indicated that Ring's conditions affected her ability to sit. [7, pp. 207, 229]

A. Medically documented presence of one of the following:

1. Systolic failure (see 4.00D 1 a(I)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

2. Diastolic failure (see 4.00D 1 a(ii)), with left ventricular posterior wall plus sepal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

B. Resulting in one of the following:

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 Mets or less due to:

a. Dyspnea, fatigue, palpitations, or chest discomfort; or

b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 CFR Pt. 404, Subpt. P, App. 1; *Dunn-Johnson v. Comm'r of Soc. Sec. Admin.*, 2012 WL 987534, at *7 (N.D. Tex. Mar. 22, 2012). Ring had the burden of proof at this step in the evaluation process, yet she did not identify what medical evidence she contends meets the requirements of the listing.

> For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment. ... A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment. (emphasis in original, footnotes and citations omitted)

*Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Ring complains that the ALJ failed to give sufficient weight to her treating physicians' opinions that she was disabled. As noted above, Ring's treating cardiologists, Dr. Grosz and Dr. Storey, opined that Ring was disabled due to her cardiac condition. The ALJ is not bound by a doctor's opinion that one is unable to work. *See Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir. 1984) (a treating physician's statement that an individual is disabled does not mean that she is disabled within the meaning of the Social Security Act). In fact such statements are not deemed medical opinions, but are instead "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.") The ALJ is not required to accord special weight or significance to a physician's opinion that a claimant is disabled or unable to work, and the ALJ can properly reject a physician's conclusion of disability as determinative on the ultimate issue. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Tamez v. Sullivan*, 888 F.2d 334, 336, n.1 (5th Cir. 1989).

The Court finds no merit in Ring's claim that the ALJ failed to properly evaluate or weigh Dr. Storey's opinion as to her capabilities. First, ALJ Williams did not reject Dr. Storey's opinion in favor of some non-specialty/non-examining expert. Second, sedentary work is defined as lifting no more than ten pounds at a time. On October 18, 2011, Ring stated she could lift and carry thirty pounds. In May 2013 Dr. Storey stated she could lift up to twenty pounds occasionally and less than ten pounds frequently, and Ring testified at the August 2013 hearing she could not lift more than ten pounds. Third, the record contains competing first-hand medical evidence documenting normal physical examinations. The Court finds no impropriety in the ALJ's evaluation of Dr. Storey's opinions.

Ring's final arguments are that the Appeals Council erred in denying review of the ALJ's decision because she presented new evidence with her request for Appeals Council review and to reopen the case. The evidence presented with the request for review consists of the following: (1) A three-page report dated August 16, 2013 from Cardiology Associates (Dr. Storey) when Ring came to the office wanting "to discuss disability papers." Review of her respiratory system at that time indicated "no shortness of breath, no wheezing, no cough, no orthopnea and no PND." Physical exam as to respiratory effort found no increase work of breathing or signs of respiratory distress. "Auscultation of the lungs revealed decreased breath sounds diffusely. Diminished breath sounds over the right midlung field and diminished breath sounds over the right base." Cardiovascular examination indicated normal PMI, no thrills, normal rate and rhythm, normal S1 and S2 without murmurs, normal abdominal aorta, normal carotid, femoral and pedal pulses and normal examination of extremities for edema or varicosities. [7, pp. 55-57] (2) A one-page August 19, 2013 radiology report for a chest x-ray from George Regional Hospital noted chronic elevation of the right hemidiaphragm as compared to the left, surgical

staples[3] within the right apex, and has what appears to be an added note stating, "I suspect she had a phrenic nerve injury from surgery after lead extraction rec pulm c/s." [7, p. 54] (3) A one-page August 20, 2013 report from Providence Hospital Sleep Evaluation Center (Dr. James Hunter) noted that Ring had been switched from CPAP to BIPAP "which is often much better in patients with congestive heart failure." [7, p. 53] (4) A three-page medical report from Dr. Lawrence Bedsole of Pulmonary Associates. Dr. Bedsole first saw Ring on September 27, 2013 for evaluation of shortness of breath and abnormal chest x-ray. His impression was that Ring had "severe restrictive ventilatory defect" which he felt was due in large part to paralyzed hemidiaphragm.[4] Dr. Bedsole found the condition "could be due to traumatic issues that she had requiring emergent surgery" in 2011, but he could not rule out that this might have been "an effect of her non-Hodgkins lymphoma of the chest that she had in her 20s" as he had no previous xrays for comparison. [7, pp. 50-51] The Appeals Council reviewed all this evidence as well as a May 17, 2013 letter from Cardiology Associates. The Appeals Council found the Cardiology Associates letter provided no basis for changing the ALJ's decision, and the information in the remaining documents was about a later time and did not affect the decision as to whether Ring was disabled *before* August 9, 2013. [7, p. 45]

With her request for reopening, Ring again presented more evidence, which included a March 17, 2014 letter from Dr. Larkin Daniels responding to a February 20, 2014 request from Ring's lawyer. From his "review of Ms. Ring's medical condition," Dr. Daniels opined that she had a phrenic nerve palsy before August 2013, though he could not identify its "absolute cause" and noted that "in many cases it is idiopathic," *i.e.*, a condition of unknown cause that arises spontaneously. He noted that Ring's history of lymphoma and the 2011 sternotomy to repair the

[3]There is no indication as to what surgery led to the presence of surgical staples.
[4]Ring thereafter had surgery to deal with the diaphragm problem on October 25, 2013. [7, p. 480]

superior vena cava could be reasons for the development of the condition. [7, p. 9] Also included in this submission are medical records from George Regional Health System for Ring's March 13-17, 2014 hospitalization and treatment for bilateral pneumonia. [7, pp. 10-42] These records note a history of phrenic nerve injury with her 2011 surgery, and state Ring underwent abdominal muscle transposition for right diagphragmatic paralysis in October 2013. The records further note she has never required home oxygen, and had oxygen levels as high as 97% on room air on the date of admission. [7, pp. 16-18, 26] The final document in this submission is a February 21, 2014 letter from Dr. Storey, recapping the 2011 surgery, vascular perforation and repair, and adding an opinion that a phrenic nerve injury occurred as a complication of that repair and left Ring with palsy of the right hemidiaphragm and "significant shortness of breath, in addition to her underlying congestive heart failure," all of which was present in August 2013. Dr. Storey also notes Ring had surgery for the diaphragm paralysis on October 25, 2013. The Appeals Council considered this evidence and found it did not warrant reopening. [7, pp. 5-6]

Plaintiff has not demonstrated that she had restrictions greater than those found by the ALJ by simply presenting evidence of a previously undiagnosed condition during the pendency of her claim which contributed to symptoms which the ALJ fully addressed in his decision.

> (b) In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. In reviewing decisions other than those based on an application for benefits, the Appeals Council shall evaluate the entire record including any new and material evidence submitted. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 416.1470. The Appeals Council found the new evidence submitted by Ring did not provide a basis to change the ALJ's decision. [7, pp. 44-45] To justify remand by the Court,

Ring's new evidence "must pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling." *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995); *Nehlig v. Commissioner of Social Security Admin.*, 40 F.Supp.2d 841, 849 (E.D. Texas 1999) (to justify remand new evidence must be material and likely to change the outcome of the case, not merely cumulative of other record evidence). The Court should remand the case to the Commissioner "only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Michell v. Astrue*, 2011 WL 1630895, at *3 (N.D. Tex. Apr. 29, 2011). The Court agrees with the Commissioner that determination of disability focuses on the functional consequences or limitations from a claimant's condition rather than its diagnostic name. Since the new evidence fails to show Ring had any greater limitation of functional capability than that addressed by the ALJ, the Court finds substantial record evidence supports the Appeals Council decision that the new evidence failed to provide a basis for changing the ALJ's decision.

Based upon consideration of the entire record of proceedings below and controlling law, the Court finds the Commissioner's final decision is supported by substantial evidence and was reached by application of correct legal standards. It is therefore,

**ORDERED AND ADJUDGED** that Plaintiff's motion for summary judgment [8] is denied, and the decision of the Commissioner is affirmed. A separate judgment will be entered in accordance with this order as required by Rule 58, FED.R.CIV.P.

SO ORDERED, this the 13th day of August, 2015.

/s/ Robert H. Walker

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE